In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

| | |
|---|---|
| Joequaus Ramar Gill, #269552, ) | Civil Action No. 9:07-3596-GRA-GCK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| York County Probation Parole and ) | |
| Pardon Services; Mrs. Molly McCormk; ) | |
| Alicia Devon Richardson; and ) | |
| Margarette B. Parrish, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I.  INTRODUCTION

The *pro se* plaintiff, Joequaus Ramar Gill ("Plaintiff" or "Gill"), was an inmate incarcerated in Evans Correctional Institution ("ECI") at the time he filed this action.  Plaintiff has brought suit pursuant to Title 42, United States Code Section 1983, alleging he was wrongfully sentenced to a one year jail term after he failed to meet the terms of his community supervision.  Plaintiff was released from custody of the South Carolina Department of Corrections on August 1, 2008.[1]

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.  The above-captioned defendants' motion for summary judgment is pending before the court.  As the defendants' motion is a dispositive motion, the Report and Recommendation is entered for review by the District Court.

---

[1]     *See* letter from Plaintiff to court filed July 31, 2008.  [37]

## II.  *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint herein pursuant to the procedural provisions of 28 U.S.C. § 1915.  This review has been conducted in light of the following precedents:  *Neitzke v. Williams*, 490 U.S. 319, 324-25, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); and *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir.1978).

The complaint *sub judice* has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs of proceeding with the lawsuit.[2]  To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious."  28 U.S.C. § 1915(e) (2)(B)(i), (ii).  A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact."  *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992).  Hence, under Section 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).  The court may dismiss a claim as "factually frivolous" under Section 1915(e) if the facts alleged are clearly baseless.  *Denton*, 504 U.S. at 31.  In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor.  *Id*.

This Court is required to liberally construe pro se documents, *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), holding them to a less stringent standard than those drafted by attorneys.  *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976);

---

[2]  Plaintiff's motion to proceed *in forma pauperis* was granted by this court's Order [6] filed on November 20, 2007.

*Hughes v. Rowe*, 449 U.S. 9 (1980) (*per curiam* ).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.  BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff filed his verified Complaint[3] on October 30, 2007[4] against the defendants ("Defendants") York County Probation Parole and Pardon Services (the "York County Department of Probation, Parole and Pardon Office" or "Department"), Mrs. Molly McCormk,[5] Second in Charge Agent ("Agent McCormick"), Alicia Devon Richardson, Agent ("Agent Richardson"), and Margarette B. Parrish, Agent in Charge ("Agent Parrish").  Plaintiff explains

---

[3] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge.  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991).  Plaintiff has filed a verified Complaint.  Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[4] Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Complaint.  *See* this court's Order [6] at p. 1.

[5] The correct spelling of this defendant's name is "McCormick," which will be used hereinafter.

that on June 5, 2007, he failed to meet the conditions of his community supervision, which was a violation of his parole condition. A administrative hearing was held on July 24, 2007 at the York County Department of Probation, Parole and Pardon Office before Hearing Officer Roy Evans ("Hearing Officer Evans"), who continued Plaintiff's community supervision. According to Plaintiff, Hearing Officer Evans ordered Plaintiff to have intensive supervision with a six month home detention, electronic monitoring for ninety days, and also ordered that Plaintiff complete a substance abuse program. Plaintiff further alleges that Hearing Officer Evans ordered his agent to withdraw the warrant or citation issued in the case. After the hearing, Agent Richardson put a leg monitor on Plaintiff.

On July 25, 2007, Plaintiff returned to the York County Department of Probation, Parole and Pardon Office to have his leg monitor loosened by Agent Richardson, who told him that her supervisor, Agent McCormick, supervisor, wanted to see him. According to Plaintiff, Agent McCormick told him she had not liked his attitude, or his mother's attitude, at the hearing on July 24, 2007, and was going to turn his case over to General Sessions Court. Plaintiff states that he and Agent McCormick had "a few words" and she advised Plaintiff to return the next day for her decision.

On July 26, 2007, Plaintiff again went to the York County Department of Probation, Parole and Pardon Office and was told by Agent McCormick that she was forwarding his case to General Sessions Court. Also on July 26, Agent Richardson served Plaintiff with a notice of a probation violation and an acknowledgment of the hearing.

On August 10, 2007, Plaintiff appeared in front of the Honorable Lee S. Alford and was sentenced to one year for violating his terms of community supervision. Plaintiff seeks an order of release and an award of $1.5 million and payment by York County Department of Probation, Parole and Pardon Office of his court costs. Plaintiff also wants "all agent's [sic] invol[v]ed to receive some kind of help for there [sic] action." (Compl. at 5).

Defendants, by brief, explain that Plaintiff was originally arrested and convicted of the offense of criminal sexual conduct with a minor in the second degree.  (See Defendants' Exhibit 1 (sentencing sheet for Criminal Sexual Conduct in the Second Degree ("CSC 2d") with a minor)).  This offense is classified as a Class C felony, and pursuant to South Carolina law, upon release from incarceration, Plaintiff must serve a continuous two year period of community supervision.  (See Defendants' Exhibit 2 (signed community program certificate)).

On February 28, 2007, Plaintiff was released on community supervision.  Plaintiff was responsible for the usual conditions prescribed by law; however, additional conditions were required:  electronic monitoring; no contact with the victim; and attendance at sex offender counseling.

While serving his community supervision, Plaintiff committed numerous violations, which caused the Department to serve Plaintiff a warrant for his arrest on June 14, 2007.  The warrant alleges that Plaintiff violated community supervision by failing to follow the advice and instructions of his agent; failing to report for two months; failing to refrain from illegal drug use by testing positive for marijuana; failing to comply with electronic monitoring and home detention; failing to obtain employment; failing to pay his supervision fees; failing to provide residence verification; and failing to comply with vocational rehabilitation.

Pursuant to Department policy, an administrative hearing was held before Administrative Hearing Officer Evans.  Upon conclusion of this hearing, Officer Evans decided that Plaintiff had violated community supervision; Officer Evans recommended intensive supervision with home detention not to exceed six months; electronic monitoring for ninety (90) days, and completion of a substance abuse program.  (See Defendants' Exhibit 4 (Administrative hearing summary)).  After making his recommendation, Hearing Officer Evans ordered that the warrant be withdrawn.

Hearing Officer Evans' order, however, was against Department policy.  (See Defendants' Exhibit 5 (Administrative hearing order)).  In fact, Department policy required that a hearing for a

violation of community supervision for the offense of CSC 2d with a minor be held before the Circuit Court.  Accordingly, Plaintiff subsequently was brought before the Honorable Lee S. Alford for a hearing regarding Plaintiff's violation of community supervision.  Upon the conclusion of this hearing, Judge Alford determined that Plaintiff had wilfully violated community supervision and sentenced him to a one year period of incarceration.  (See Defendants' Exhibit 6 (Judge Alford's revocation order)).

While serving his sentence, Plaintiff filed the present action.  [1]  On February 26, 2008, the Defendants filed an Answer to the Complaint along with a motion for summary judgment and a supporting memorandum.  [23; 24]  The undersigned issued an Order on February 27, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified Plaintiff of the Defendants' motion, the dismissal procedure and the possible consequences if Plaintiff failed to adequately respond to the Defendants' motion within thirty-four (34) days.  [26]  On March 6, 2008, Plaintiff filed a response in opposition to the Defendants' motion for summary judgment. [28]

## IV.  THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

The Defendants' motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*,  818 F. 2d 1126 (4th Cir. 1987).  Similarly, genuine disputes of material facts are not demonstrated by the bald statements

of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence. The nonmoving party, then, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## V.  DISCUSSION

### A.  Introduction

As mentioned earlier in this Report, Plaintiff was released from the custody of the South Carolina Department of Corrections on August 1, 2008. Thus, to the extent Plaintiff seeks injunctive relief in the form of his release from ECI, his claims are moot. *Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977); *see also Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *Buie v. Jones*, 717 F.2d 925, 927-929 (4th Cir. 1983); *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). *Williams v. Griffin*, 952 F.2d 820, 823 (4th

Cir. 1991) ("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."); *Taylors v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) (holding that prisoner's transfer mooted a request for declaratory and injunctive relief).

Plaintiff also asserts a claim for monetary damages, and a claim for monetary damages survives an inmate's release from custody. *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248-49 (4th Cir. 2005); *Clay v. Miller*, 626 F.2d 345, 346 (4th Cir. 1980) (*per curiam); see also Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir.2003) (finding that transfer to another jail did not moot damages claim for a suit filed pursuant to § 1915(g)); *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976) (claim for monetary damages survives transfer). Therefore, Plaintiff's claim for monetary damages in this case is not moot, and must be considered by this Court on the merits.

### B.  Whether Plaintiff has Stated a Cause of Action Upon Which Relief May be Granted

Plaintiff argues that his civil rights were violated when his agent brought him before the Circuit Court, which proceeded to revoke his community supervision and sentence him to a one year period of incarceration. In response, Defendants contend that community supervision is a two year continuous term of supervision that must be completed by individuals who have committed "no parole offenses." Failure to abide to these conditions could possibly result in a one year period of incarceration that cannot exceed an amount of time equal to the length of incarceration imposed for the original "no parole offense." S.C. Code Ann. § 24-21-560 (Supp. 2006).

It is undisputed that Plaintiff violated the conditions of his community supervision. Due to the nature of his original offense, Department policy required that he be brought before the Circuit Court. The policy of the Department specifically states:

> In all cases where a sex offender is under supervision for an offense described in Section 23-3-540 of the S.C. Code, and where the Hearing Officer finds probable cause that a violation occurred, the Hearing Officer must forward the case to the Court, Board, or revoking authority for final disposition.

Policy 707, S.C. Dept. of Probation Parole and Pardon Policies and Procedures. (*See* Policy, attached to Defendants' letter, docketed as [35]).

The Department's Policy 707 makes it mandatory for anyone sentenced to criminal sexual conduct with a minor in the second degree to be brought before a Circuit Court upon violation of community supervision. Defendants contend that the findings made by Hearing Officer Evans were merely recommendations that the Court must be made aware of, but is not obligated to follow. *See, e.g, State v. Hamilton*, 333 S.C. 642, 511 S.E.2d 94 (1998) (the Circuit Court, presiding over a revocation proceeding was not bound by the defendant's agreement with the probation officer.) Although Hearing Officer Evans issued an order for the warrant to be withdrawn, the withdrawal was contrary to Department policy, and therefore the order could not be followed by the Defendants.

Plaintiff is currently seeking a reversal of a decision revoking his community supervision, contending this decision denied him his constitutional rights under 42 U.S.C. § 1983, which specifically states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any right, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief until shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

In order to state a claim upon which relief can be granted under § 1983, Plaintiff must establish: (1) there was a violation of rights protected by the Federal Constitution or created by a federal regulation or statute; (2) proximately caused; (3) by the conduct of the person; (4) who acted under color of any statute, ordinance, regulation, custom or usage of the State of South

Carolina. 42 U.S.C. § 1983. In applying these elements or requirements to the claims made by Plaintiff, it is clear to the court that he has failed to raise a genuine issue as to any material fact.

Claims made under § 1983 are limited to violations of rights protected by the United States Constitution and the federal law. *Quillian v. Evatt*, 315 S.C. 489, 445 S.E.2d 639 (Ct. App. 1994). Plaintiff was on community supervision due to a conviction for criminal sexual conduct with a minor. According to the community supervision statute, the period of time a prisoner is required to participate in this program and the individual terms and conditions of a prisoner's participation shall be at the discretion of the department based upon guidelines developed by the director. S.C. Code Ann. § 24-21-560 (Supp. 2007). This statute authorizes the Department to establish policies which permit inmates to be properly supervised on community supervision. The policy requiring an individual to appear before the Circuit Court was required by the state legislature and cannot be considered as a denial of Plaintiff's constitutional rights.

The cardinal rule of statutory construction is to determine and give effect to the intent of the legislature. *Hiott v. State*, 375 S.C. 354, 652 S.E.2d 436 (2007). The wording of the statute makes clear that the legislature intended for a person upon release from incarceration for a "no parole" offense to serve a period of community supervision. The period of supervision is monitored and controlled by the Department; therefore, once a person violates his supervised release, he will fall within the guidelines established by the Department. One of the guidelines requires, as a result of the offenses Plaintiff committed, that he appear before the Circuit Court for a determination regarding the violation and whether he should be subject to incarceration. The Department's control of the community supervision program is mandated by statute. It follows, then, that Plaintiff's appearance before Judge Alford was authorized by statute.

In this case, the Department acted pursuant to statute, and Plaintiff was properly brought before Judge Alford. The Defendants are entitled to summary judgment as a matter of law.

### C. Plaintiff's Claims are Barred by the Doctrine of Qualified Immunity

Plaintiff seeks relief against the Defendants for failing to follow the recommendations of the hearing officer and bringing him before the Circuit Court for a hearing regarding his violation of the terms of his of community supervision.  Pursuant to South Carolina law, the individual terms and conditions of community supervision are at the discretion of the Department under the guidelines of the Director.  Plaintiff's revocation falls within the panoply of rights given to the Department by the legislature.  As an additional reason for recommending that Defendants be granted summary judgment, the Defendants in this case were acting within their official capacities and therefore are immune from liability under the doctrine of qualified immunity.

In *Harlow v. Fitzgerald*, the United States Supreme Court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In the present case, the Department had the right to create a policy that required a person being supervised under certain offenses to be brought before the Circuit Court for a determination of his community supervision violation, regardless of the final determination of the hearing officer. The Defendants did not violate a clearly established statutory or constitutional right of which a reasonable person would have known,  *Harlow* 457 U.S. at 818, and the Defendants are immune from liability.

In *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991), the Fourth Circuit Court of Appeals explained the rationale of the *Harlow* decision regarding qualified immunity.  In *Torchinsky*, the Fourth Circuit Court of Appeals observed:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits.  Without such immunity, the operations of government would be immobilized.  Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

*Torchinsky v. Siwinski*, 942 F.2d at 260-261 (internal quotations and citations omitted).

*Torchinsky* teaches that the government cannot be in fear of a lawsuit in order to perform its duties. The duty of the Defendants is to ensure that the Department appropriately supervises individuals on community supervision and to bring before the Court any individual to answer to his violations. This responsibility was given to the Department by the legislature through the creation of the community supervision program, and it follows that the Department must be able to make supervisory decisions without fear of possible litigation. In the present case, Defendants were performing their official duties and should be immune from liability under the doctrine of qualified immunity.

### D. The Eleventh Amendment Precludes Plaintiff's Cause of Action

Even if the Plaintiff were to have stated a cognizable claim against the Defendants, the Eleventh Amendment poses a jurisdictional bar to the assertion of any claim against the Defendants. The Department is an entity of the State of South Carolina created by statute. *See* S.C. Code Ann. § 1-30-10(A)(15)(Supp. 2001). The Eleventh Amendment to the United States Constitution provides:

> [t]he judicial power of the United States shall not be constructed to extend to any suit in law or equity, commenced or prosecuted again stone of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI.

In *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Will*, 491 U.S. at 66 (internal citations omitted).

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that states agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. *Will*, 491 U.S. at 70.

Under the South Carolina Tort Claims Act, the government waives immunity in certain circumstances. Section 15-78-70(b) of the South Carolina Code of Laws states: "Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70 (Supp. 2001).

The warrant, administrative hearing, and presentment before the Circuit Court were within the official duties of the Defendants. In the present case, the Plaintiff contends that his constitutional rights were violated due to his presentment before the Circuit Court. However, as stated earlier, this presentment was mandated by the legislature when it enacted the relevant statute. Therefore, the Defendants have acted in accordance with their official duties, as prescribed by statute, and immunity is not waived.

The South Carolina Tort Claims Act also states: "The governmental entity is not liable for a loss resulting from [a] responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner." S.C. Code Ann. §15-78-60(25). It is undisputed that the individual Defendants were acting in their official capacities as state employees of the South Carolina Department of Probation, Parole and Pardon Services. Plaintiff has not shown how any of the Defendants acted in a grossly negligent manner. Therefore, the Defendants are entitled to immunity from damages for their alleged actions, to the extent that they are sued in their official capacities.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that the **Defendants' Motion for Summary Judgment [24] be granted.**

_____
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

August 21, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

P.O. Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).